## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**BARONE LEWIS**                                    **CASE NO.  6:23-CV-00741**

**VERSUS**                                              **JUDGE ROBERT R. SUMMERHAYS**

**COMMISSIONER OF SOCIAL SECURITY**                  **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Claimant, Barone Lewis, fully exhausted his administrative remedies before filing this action in federal court. He filed applications for social security disability ("SSDI") benefits and supplemental security income ("SSI") benefits alleging disability beginning on March 4, 2020.  His applications were denied. He then requested a hearing, which was held on November 2, 2022, before Administrative Law Judge ("ALJ") Thomas Henderson.  The ALJ issued a decision on December 7, 2022, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision.

(Rec. Doc. 5-1, pp. 15-34). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (*Id*. at pp. 5-10). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on October 15, 1974. He was 48 years old at the time of the ALJ's decision. He graduated high school. (Rec. Doc. 5-1, p. 38).  He had a steady work history including employment as a Popeye's cook, security guard, and pipe yard laborer, and he last worked in March of 2020.  (*Id*. at p. 39). At the time of the hearing, he was living with his girlfriend and her two adult children. (*Id*. at p. 40).  He alleges that he has been disabled since March 4, 2020, due to left hip pain after sustaining an injury while working at a pipe yard. (*Id*. at pp. 42 & 230).  Since then, Claimant has also developed right shoulder pain unrelated to the work injury. (*Id*. at p. 46).

Claimant explained that he spends his day "trying to move around."  (*Id*. at p. 40).  He takes walks, goes to the store, walks around the yard, and sits for as long as he can.  (Rec. Doc. 5-1, p. 40).  His girlfriend handles house chores and cooking. (*Id*. at p. 41).  He reported that he will sometimes drive when his girlfriend cannot.

(*Id*.).  Claimant alleges that he uses a cane to walk at times, cannot bend on his left side, and uses an assistive device to put on his socks.  (*Id*. at p. 43).  He described his pain as sharp like lightening to dull aches and says it has gotten worse since his injury.  (*Id*. at p. 46).  Per Claimant, there are days, up to three to four times a month, where he cannot get out of the bed and nights where he cannot sleep due to the pain.  (*Id*. at p. 45).  According to Claimant, along with his hip and shoulder pain, his obesity makes it difficult for him to walk and lift himself up.  (Rec. Doc. 5-1, p. 47).

In addition to heart, breathing, pulmonary, diabetes, and hypertension medication, Claimant takes a muscle relaxer, hydrocodone (Norco), and naproxen for pain relief.  (*Id*. at pp. 48-50).  Claimant explained that his pain level would be 10 out of 10 without his pain medication. (*Id*. at p. 50).  Even with medication, Claimant states that he could neither stand nor sit for extended periods of time due to his pain and notes that his concentration is negatively affected due to the pain. (*Id*. at p. 51).

The relevant medical records in the record reveal the following pertinent history:

- On July 13, 2020, Claimant presented at Lafayette Bone and Joint Clinic following his March 4, 2020 work injury with complaints of left hip pain. Claimant's hip pain was characterized as moderate, aching, deep, nagging with use and tender at the proximal tip of the left trochanter. He reported his pain as 7 or 8 out of 10. Claimant had an antalgic gait, was utilizing a cane, and denied dizziness. X-rays revealed moderate to severe degenerative changes with complete loss of superior joint space and osteophyte formation consistent with osteoarthritis. Claimant was

diagnosed with osteoarthritis of the left hip, recommended for physical therapy three times a week for four weeks, prescribed a mild pain reliever and Mobic for inflammation, and instructed to follow-up in one month for reevaluation.  The treating physician noted that he may possibly need hip replacement surgery in the future. (Rec. Doc. 5-1, pp. 291-293).

• On August 10, 2020, Claimant again presented at Lafayette Bone and Joint Clinic.  The results from his physical examination were unchanged from those obtained one month earlier. Claimant reported that he had yet to start physical therapy and was instructed to follow-up in one month for reevaluation. He reported his pain as 9 out of 10.   (*Id*. at pp. 294-296).

• On September 10, 2020, Claimant again presented at Lafayette Bone and Joint Clinic.  The results from his physical examination were unchanged from those obtained 1 month earlier but his diagnosis was updated to include trochanteric bursitis of the left hip. He reported his pain as 9 out of 10 and received an injection in his hip to alleviate swelling and pain.   (*Id*. at pp. 297-299).

• On October 5, 2020, Claimant again presented at Lafayette Bone and Joint Clinic.  The results from his physical examination were unchanged from those obtained 1 month earlier. He reported his pain as 8 out of 10 and noted some improvement with soreness and mobility following the start of physical therapy and the injection.  Claimant complained of constant pain in the left groin and hip joint.  (*Id*. at pp. 300-302).

• On November 6, 2020, Claimant again presented at Lafayette Bone and Joint Clinic.  The results from his physical examination were unchanged from those obtained 1 month earlier. He reported his pain as 8 out of 10. (*Id*. at pp. 303-305).

• On December 4, 2020, Claimant again presented at Lafayette Bone and Joint Clinic.  The results from his physical examination were unchanged from those obtained 1 month earlier. He reported his pain as 9 out of 10. (*Id*. at pp. 306-308).

• Records were provided from Claimant's primary care physician Dr. Edison Ong from May 2020 to March 2022.  Claimant was seen on a regular basis and reported neck, shoulder, lower back, and hip pain.   Claimant's

diagnoses included spondylosis of the thoracolumbar region, neck pain, morbid obesity, pain in both shoulders, pain in the left hip, cervical spondylosis with radiculopathy, low back pain, and hypertension. His course of treatment, namely medications, remained the same. (Rec. Doc. 5-1, pp. 309-370).

- January 2021 diagnostic imaging of Claimant's shoulders revealed mild arthritic changes in the right shoulder but no significant arthritic changes in the left. January 2022 diagnostic imaging of Claimant's cervical spine indicated cervical spondylosis and straightening of the normal cervical lordosis. January 2022 diagnostic imaging of Claimant's shoulders indicated mild to moderate degenerative changes to the right shoulder and minimal to mild degenerative changes to the left shoulder. January 2022 diagnostic imaging of Claimant's left hip indicated severe degenerative changes. (*Id*. at pp. 371-376).

- Claimant underwent outpatient rehabilitative physical therapy following his work injury until he requested to be discharged in May of 2022. At the time of his discharge, Claimant reported that physical therapy "really helped" with his neck, shoulders, and lower back pain and helped to loosen up his left hip but was still reporting hip pain. His provider noted that Claimant should tolerate activity for 30 minutes without increased pain and Claimant's antalgic gait was noted as improved. Claimant still reported difficulty reaching to pick up objects but reported that his ability to perform overhead activities and standing from chairs has improved. He reported no problems turning his head while driving. (*Id*. at pp. 674-690).

- In August 2021, Claimant was evaluated by Dr. Forrest Wright who opined that Claimant could perform a range of light work with reduced standing and walking and postural, overhead reaching, and environmental limitations. (*Id*. at pp. 59-66).

The ALJ found that Claimant suffered from the severe impairments of osteoarthritis, degenerative disc disease, varicose veins, and obesity. (Rec. Doc. 5-1, pp. 21). Nonetheless, the ALJ found Claimant was not disabled because he had the residual functional capacity to perform sedentary work as defined in 20 CFR

404.1567(a) and 416.967(b) except Claimant can only occasionally perform postural activities; can never climb ladders, ropes or scaffolds; can occasionally overhead reach with the right upper extremity; and must avoid moderate exposure to pulmonary irritants such as fumes and gases. (*Id*. at pp. 22-26). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A.   Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

The Commissioner's findings must be affirmed as conclusive when they are supported by substantial evidence.  42 U.S.C. § 405(g); *Martinez*, 64 F.3d at 173. In

determining whether the Commissioner's findings are sufficiently supported, a court must carefully examine the entire record but cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa*, 895 F.2d at 1022. To that end, the court may not re-assess credibility or independently resolve conflicts in the evidence. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience. *Wren*, 925 F.2d at 126.

### B.   Entitlement to Benefits

The SSDI program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a).  See also *Smith v. Berryhill*, 139 S. Ct. 1865, 1772 (2019). SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2).  See also *Smith*, 139 S. Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical

or mental impairment or impairments are so severe that he is unable do his previous

work and considering his age, education, and work experience, cannot participate in

any other kind of substantial gainful work that exists in significant numbers in the

national economy, regardless of whether such work exists in the area in which the

claimant lives, whether a specific job vacancy exists, or whether the claimant would

be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

**C.    Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is

disabled.  The Commissioner must determine whether the claimant (1) is currently

working; (2) has a severe impairment; (3) has an impairment listed in or medically

equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do

the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. §

404.1520.

Before going from step three to step four, the Commissioner evaluates the

claimant's residual functional capacity by determining the most the claimant can still

do despite his physical and mental limitations based on all relevant evidence in the

record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's

residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

While the claimant bears the burden of proof on the first four steps, the Commissioner assumes the burden on the fifth, and must show that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D.    The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since March 4, 2020.  (Rec. Doc 5-1, p. 20).  This finding is supported by substantial evidence in the record.

9

At step two, the ALJ found that Claimant has the following severe impairments: osteoarthritis, degenerative disc disease, varicose veins, and obesity. (*Id.* at p. 21).  This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (*Id.* at pp. 21-22).  Claimant challenges this finding.

The ALJ found Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR  404.1567(a) and 416.967(b) except Claimant can only occasionally perform postural activities; can never climb ladders, ropes or scaffolds; can occasionally overhead reach with the right upper extremity; and must avoid moderate exposure to pulmonary irritants such as fumes and gases. (*Id.* at pp. 22-26). Claimant challenges this finding.

At step four, the ALJ found Claimant is unable to perform any past relevant work. (*Id.* at p. 26). Claimant does not challenge this finding.

At step five, the ALJ found that a significant number of jobs which Claimant was capable of performing existed in the national economy. (*Id.* at p. 27-28). Claimant challenges this finding to the extent he challenges the ALJ's RFC finding.

### E.    The Allegation of Error

Claimant alleges the ALJ erred by 1) utilizing "word salad" analysis and failing to conduct a reasoned evaluation of the evidence; 2) finding that Claimant

has the sustained capacity for work activity without the support of substantial evidence; 3) failing to give Claimant's chronic need for, and use of, opioid medication adequate or appropriate consideration; and 4) failing to appropriately and adequately consider Claimant's obesity when determining his ability to perform sedentary work.  (Rec. Doc. 6).  The Court shall consider the first two allegations contemporaneously as challenges to the ALJ's RFC finding.

### F.    Whether the ALJ properly assessed Claimant's RFC.

Claimant challenges the ALJ's RFC finding that he is able to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(b) except Claimant can only occasionally perform postural activities; can never climb ladders, ropes or scaffolds; can occasionally overhead reach with the right upper extremity; and must avoid moderate exposure to pulmonary irritants such as fumes and gases. Specifically, Claimant alleges that the ALJ failed to conduct a reasoned evaluation of the evidence and, in turn, made the decision without the support of substantial evidence.

A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).  The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In making

a finding in that regard, the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

This Court rejects Claimant's contention that the ALJ failed to conduct a reasoned evaluation of the evidence.  To the contrary, the ALJ considered all of the subjective and objective evidence.  Indeed, the ALJ dedicated almost six pages to analyzing Claimant's testimony and the medical records.  (Rec. Doc. 5-1, pp. 21-26).  The ALJ also engaged in the required sequential five-step inquiry to determine whether Claimant is disabled.  In doing so, the ALJ found that Claimant does suffer

from several severe impairments but found that said impairments did not rise to the level of disabling. (*Id*.).

Pertinent to Claimant's contentions, the ALJ considered Claimant's testimony that he has a number of limitations, namely lifting, squatting, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, talking, completing tasks, concentrating, following instructions, and handling stress as well as Claimant's testimony that he needs help putting on his socks and cannot hold a phone. (*Id*. at p. 23). Claimant's testimony, however, is not and cannot be substantiated by any of the medical records and was contradictory to other statements made by Claimant at the hearing. As the ALJ noted, Claimant also testified that he can travel outside of his home independently, tend to most personal care needs, shop, and drive. (*Id*. at pp. 40-53). The ALJ engaged in a detailed analysis of the medical records, finding that they fail to provide strong support for Claimant's allegations of disabling symptoms and limitations. (*Id*. at pp. 23-26). Accordingly, the Court finds that the ALJ conducted a reasoned evaluation of the evidence.

i. **Whether the ALJ properly considered Claimant's chronic need for, and use of, opioid pain medication.**

Claimant cites *Topham v. U.S. Commissioner, Social Security Administration* in support of his allegation that the ALJ failed to properly consider his chronic need for, and use of, opioid medication for pain. (Rec. Doc. 6, p. 8). *Topham* is distinguishable from the present matter. In *Topham*, the Court reversed and

remanded the ALJ finding that the ALJ's conclusion that the claimant's pain was not disabling was not supported by the substantial evidence in the record. *Topham v. U.S. Comm'r Soc. Sec. Admin.*, No. 6:17-CV-00693, 2018 WL 1834371 (W.D. La. Mar. 16, 2018), report and recommendation adopted, 2018 WL 1833512 (W.D. La. Apr. 17, 2018). Unlike the present matter where Claimant's pain is managed by medications, the claimant in *Topham* was using a significant opioid cocktail to reduce his pain, namely, Methadone, Lortab, and Norco. *Id*. at *7. Despite taking those strong painkillers, the claimant still consistently reported to his physicians that his pain never fully went away; physical therapy did not alleviate his lumbar pain; lumbar epidural steroid injections provided only short-term relief; a back brace made his pain worse; and a spinal cord stimulator provided little relief. *Id*. at *13. Furthermore, the *Topham* claimant had also undergone multiple invasive spinal surgeries, none of which alleviated his pain and problems, and had hardware engaging with a spinal nerve. *Id*. at *9. Here, Claimant has not undergone surgery and discontinued physical therapy following noted improvement.

The *Topham* Court, *sua sponte*, also found that the ALJ failed to properly consider the effects of the claimant's opioid medication use on his employability. *Id*. at *14. The Court found that the vocational expert who opined that there were jobs in the economy that the claimant could perform was not questioned about the effects of Methadone, Lortab, and Norco on an individual's ability to maintain

14

employment. *Id.* Again, the Court draws a distinction between the present case where Claimant is prescribed one narcotic, hydrocodone (Norco), and the *Topham* claimant who was prescribed an opioid cocktail.

The ALJ in the present matter also noted and considered Claimant's alleged side effects from his medication, namely drowsiness and dizziness, but found that when "[t]urning to the medical evidence, the objective findings…fail to provide strong support for [Claimant's] allegations of disabling symptoms and limitations." (Rec. Doc. 5-1, p. 23). Notably, Claimant continually denied dizziness during his medical appointments, and the records are void of complaints of drowsiness or other adverse complaints regarding his medications. (*Id.* at pp. 291-308). Accordingly, the ALJ properly considered Claimant's chronic need for, and use of, opioid pain medication.

### ii.  Whether the ALJ properly considered Claimant's obesity.

Claimant alleges that his obesity was given "only pro forma treatment" by the ALJ. The ALJ Social Security Ruling ("SSR") 02-1p recognizes that "[f]or adults, both men and women, the Clinical Guidelines describe ... a [body mass index ('BMI') ] of 30.0 or above as 'obesity.' " SSR 02-1p, *Titles II and XVI: Evaluation of Obesity*, 2002 WL 34686281, at *2 (Sept. 12, 2002). The ruling also expressly acknowledges that obesity can cause functional limitations in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, stooping, crouching,

15

manipulating, as well as the ability to tolerate extreme heat, humidity, or hazards. SSR 02-1p, 2002 WL 34686281, at \*6. Thus, although obesity is not a listed impairment, it can reduce an individual's occupational base for work activity in combination with other ailments. See *Holt v. Saul*, No. 4:19-CV-01894, 2020 WL 2549346, at \*3 (S.D. Tex. May 19, 2020); *McGee v. Astrue*, No. H-10-575, 2011 WL 11048325, at \*3 (S.D. Tex. Feb. 25, 2011). Because it can have such a wide range of effects on a claimant, obesity must be considered at all steps of the sequential evaluation process. SSR 02-1p, 2002 WL 34686281, at \*3. See, also, e.g., *Holt v. Saul*, 2020 WL 2549346, at \*3; *Perkins v. Berryhill*, No. 4:18-CV-664-A, 2019 WL 2997082, at \*2 (N.D. Tex. June 21, 2019), report and recommendation adopted, 2019 WL 2996055 (N.D. Tex. July 9, 2019).

Here, Claimant testified that his obesity makes it difficult for him to walk and lift himself up. (Rec. Doc. 5-1, p. 47). In considering Claimant's obesity, the ALJ noted that "[o]besity is often associated with musculoskeletal, respiratory, cardiovascular, and endocrine disorders." (*Id.* at p. 22). The limitations alleged by Claimant due to his obesity (difficulty walking and lifting himself up) were considered by the ALJ throughout his RFC assessment. Specifically, the ALJ found that Claimant had normal gait with normal strength; improved left hip mobility and strength; good postural muscle firing and hip control; reported improvement with soreness and mobility; and improvement with walking and balance. (*Id*. at pp. 24-

25).  In reviewing the ALJ's assessment in its totality, the Court finds that the ALJ properly considered any additional and cumulative effects of Claimant's obesity.

In sum, Claimant's disagreements are based on the ALJ's credibility determinations and weight ascribed to the evidence before it.  The Commissioner's findings must be affirmed as conclusive when they are supported by substantial evidence.  42 U.S.C. § 405(g); *Martinez*, 64 F.3d at 173.  This Court finds that the ALJ's decision is supported by substantial evidence in the existing record and will not, indeed cannot, re-weigh said evidence or substitute its own judgement. *See Hollis*, 837 F.2d at 1383; *Villa*, 895 F.2d at 1022.  Accordingly, Claimant's assignments of error are meritless.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[1]

Signed in Lafayette, Louisiana, this 7th day of March, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[1]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).